UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DAVID L. BEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:04-CV-294 |
| | ) (SHIRLEY) |
| LOWE'S HOME CENTERS, INC., | ) |
| d/b/a LOWE'S HOME IMPROVEMENT | ) |
| WAREHOUSE STORE OF KNOXVILLE, | ) |
| STORE NO. 0637, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This civil action is before the Court pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment. [Doc. 22]. The parties appeared before the Court on October 13, 2009, for a hearing to address the Plaintiff's Second Motion to Exclude the Testimony of Dr. Theron Blickenstaff [Doc. 68]. Attorney Robert E. Pryor, Jr., was present representing the Plaintiff. Attorney Clint J. Woodfin was present representing the Defendant.

**I.    BACKGROUND**

While it is unnecessary to restate the entire procedural history of this matter, the Court will briefly review the procedural history relating to experts in this matter. On January 22, 2008, the Plaintiff made his expert disclosure as to Dr. Francisco Moreno ("Dr. Moreno"). [Doc. 37-1] Thereafter, the Defendant moved to exclude the opinions of Dr. Moreno, arguing that Dr. Moreno's testimony was not reliable and should be excluded pursuant to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). [Doc. 42] At the same time, the Defendant also moved for summary

judgment, arguing that the Plaintiff lacked the evidence needed to establish a prima facie case. [Doc. 43] After a hearing on the motions, the Court granted the motion to exclude Dr. Moreno's expert testimony and granted the motion for summary judgment. [Docs. 48 and 50]. The Plaintiff appealed the Court's decision to the United States Court of Appeals for the Sixth Circuit [Doc. 53], which reversed this Court's ruling and remanded the case for further proceedings. [Doc. 54].

On July 10, 2009, this Court entered an order extending the deadline for the Defendant to make expert disclosures, in light of the case's procedural history and other equitable considerations. The Court limited the Defendant to "one expert to be offered in rebuttal to Dr. Moreno." [Doc. 61 at 7]. The Defendant retained the services of Theron Blickenstaff, M.D., F.A.C.O.E.M., ("Dr. Blickenstaff"). The Plaintiff initially moved to exclude Dr. Blickenstaff's testimony on grounds that the Defendant had failed to timely respond to requests to depose Dr. Blickenstaff and had failed to schedule Dr. Blickenstaff's deposition within the deadline set by this Court. [Doc. 63]. The Court denied this motion, [Doc. 66], and Dr. Blickenstaff's deposition was conducted on August 31, 2009.

On September 29, 2009, the Plaintiff filed his Second Motion to Exclude the Testimony of Dr. Theron Blickenstaff, [Doc. 68]. The Defendant filed its Response to Second Motion to Exclude [Doc. 69] on October 9, 2009, and the Court held a hearing on the matter on October 13, 2009. The motion is now ripe for adjudication. For the reasons more fully explained below, the Court finds that the Plaintiff's Second Motion to Exclude the Testimony of Dr. Theron Blickenstaff **[Doc. 68]** is not well-taken, and it is **DENIED**.

2

Case 3:04-cv-00294   Document 72   Filed 10/21/09   Page 2 of 11   PageID #: 417

## II. ANALYSIS

Dr. Blickenstaff will testify to the following opinions: (1) that the harm alleged by the Plaintiff (anosmia—loss of ability to smell) could not have occurred from contact with the material spilled on the Plaintiff, a product called AquaEZ Super Clear Clarifier ("Aqua EZ"), or its chemical component; (2) the polymer at issue (Poly(Dimethyldiallylamminium Chloride)) has a high molecular weight and low level of toxicity and has no or very low volatility, meaning it does not evaporate in air, and would not have gotten in the Plaintiff's nose or olfactory mucosa unless vaporized or sprayed as a mist; and (3) the material spilled would not be expected, in any event, to cause any damage to the Plaintiff's olfactory nerve. [Doc. 68-1 at 1-69 and 76-77]. In his motion, the Plaintiff presents three[1] grounds for excluding Dr. Blickenstaff from testifying under Daubert. The Plaintiff argues that: Dr. Blickenstaff lacks the requisite knowledge and experience to testify as an expert; Dr. Blickenstaff's opinions are based upon insufficient data and facts; and Dr. Blickenstaff has not employed reliable methodology, such as differential diagnosis. [Doc. 68]. The Defendant responds that Dr. Blickenstaff is qualified, his opinions pass Daubert muster, and Plaintiff's arguments are fodder for cross-examination but are not grounds for excluding Dr. Blickenstaff from testifying. [Doc. 69].

In Daubert, the United States Supreme Court confirmed that the trial court should serve as a gatekeeper, preventing the jury from being overwhelmed by unsupportable speculation cloaked as expertise. 509 U.S. at 595-96. In response to Daubert and subsequent decisions, Rule 702 of the

---

[1] The Plaintiff also included additional information about the issues raised in his first motion to exclude. [Doc. 68 at 7]. This issue was sufficiently addressed by the Court in its prior order [Doc. 66] and will not be addressed again in this order.

Federal Rules of Evidence was amended and now provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). Instead, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. This is based on the recognition that "our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." Amorgianos, 303 F.3d at 267. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596 (citing Rock v. Arkansas, 483 U.S. 44, 61 (1987)).

Looking first to Dr. Blickenstaff's qualifications and expertise, the Plaintiff argues that Dr. Blickenstaff is not qualified to serve as an expert because he does not hold a degree in toxicology and has only served as a 'company doctor' at Eastman Chemical Company ("Eastman"). The Plaintiff notes that Dr. Blickenstaff has no chemical engineering training, board certification in toxicology, or practice experience in otolaryngology. Further, Plaintiff adds that Dr. Blickenstaff is not familiar with AquaEZ and only has experience with polymers from his time at Eastman. The

4

Defendant responds that Dr. Blickenstaff's experience working both with polymers and polymer exposure at Eastman, along with his Doctor of Medicine and Master of Public Health (Epidemiology), make him sufficiently qualified to opine in this matter.

Based on Dr. Blickenstaff's *curriculum vitae* and testimony [Doc. 68-1], Dr. Blickenstaff worked in two separate capacities during his tenure at Eastman. Between 1982 and 1989, he served as a staff physician in the company's medical department, and his duties included treating ill and injured employees, including employees exposed to chemicals in the course of their work at Eastman. His job duties also included thoroughly understanding substances employees were exposed to and the effects this exposure had on employees. He also provided opinions and treatment regarding harmful exposure to chemicals. From 1989 to 1999, Dr. Blickenstaff worked as a senior technical associate, in applied toxicology, product safety, and stewardship, at Eastman. In this position, Dr. Blickenstaff assessed products and their toxicity and the potential adverse human health effects that could result from exposure to chemicals including polymers. He also wrote and reviewed MSD sheets. He has experience in analyzing occupational and environmental exposures to chemicals and providing opinions regarding whether there are any adverse health effects.

The Court notes that in addition to being a licensed physician in Tennessee, Dr. Blickenstaff is board certified in occupational medicine, is a fellow of the American College of Occupational and Environmental Medicine, and is affiliated with the Tennessee College of Occupational and Environmental Medicine. He testified he has been accepted in every court where he has testified as an occupational and environmental physician with knowledge of toxicology. This appears to be born out by a review of the cases he listed. See Johnson v. Thomasville Furniture, 693 S.E.2d 166 (Table) (N.C. Ct. App. 2009) (testifying as a medical doctor/toxicologists in a chemical/dust

5

exposure case); see also Ritescreen, Inc. v. Donald Campbell, 2008 WL 4489464 (Tenn. 2008) (testifying as an occupational medicine specialists in chemical exposure case) and Johnson v. Snap-On Inc., 2005 WL 3213910 (Tenn. 2005) (testifying as a specialist in occupational and environmental medicine in chemical/dust exposure).

Based upon this experience, the Court concludes that Dr. Blickenstaff possesses the expertise to offer opinions regarding the particular polymer contained in AquaEZ, its volatility, molecular weight, toxicity, and the potential for inhalation or harm (including any harm it would have posed if it, in fact, came in contact with the Plaintiff's olfactory nerve). Dr. Blickenstaff has treated patients exposed to similar, albeit not identical, materials in his work as a staff physician at Eastman and has examined polymers and chemicals, and assessed their potential for exposure and the effects of such exposure in his capacity as a technical associate at Eastman. This experience qualifies him as an expert for purposes of rebutting Dr. Moreno's testimony on the limited issues isolated above. Further, his later work at Eastman entailed studying and reviewing their new products, their component chemicals, and their characteristics, and this experience qualifies him to testify to the molecular and toxicological characteristics of Poly(Dimethyldiallylamminium Chloride)

The Plaintiff argues that Dr. Blickenstaff's lack of a board certification in toxicology, the fact that he is not a chemical engineer or otolaryngologist, his past involvement in litigation, and the time that has passed since his work in the field, weigh against admission of his testimony. While these facts are certainly material to a vigorous cross-examination and grounds for discounting the doctor's expert testimony, they do not warrant total exclusion of his testimony.

Turning to the sufficiency of the data and facts used by Dr. Blickenstaff, the Plaintiff argues that Dr. Blickenstaff has never seen the actual container of AquaEZ whose contents poured on the

Plaintiff. Further, the Plaintiff maintains that Dr. Blickenstaff has never performed any diagnostic testing and does not know the amount of chemicals to which the Plaintiff was exposed. The Plaintiff also notes that, prior to his deposition, Dr. Blickenstaff had never seen particular MSD sheets (Sigma-Aldrich and Ciga) for Poly(Dimethyldiallylamminium Chloride). The Defendant responds that the Plaintiff's argument is, again, more appropriately addressed through cross-examination and is not grounds for exclusion.

Initially, the Court notes that at the hearing the parties represented to the Court that neither party possesses the actual bottle of AquaEZ that spilled on the Plaintiff. Thus, as the Plaintiff noted, Dr. Blickenstaff was not presented with that bottle of AquaEZ, and it appears that he was never presented with any bottle of AquaEZ or the liquid itself. However, Dr. Blickenstaff was provided with pictures of a bottle of AquaEZ, [Doc. 68-1 at 98-101], which were represented by the Defendant's attorney at the hearing to be the same type of bottle as that in issue. Dr. Blickenstaff said he was not sure he had been given the MSDS produced by Sigma-Aldrich. However, he had seen and reviewed the MSDS produced by Ciba Laboratories—an MSDS addressing the same chemical.

While it might have been ideal to have the actual AquaEZ container and its contents made available to Dr. Blickenstaff, it appears to the Court that the same did not exist for either sides' expert. Further, Dr. Blickenstaff's testimony relies on application of general toxicology and molecular principles and his knowledge and experience dealing with polymers and similar chemical compounds, and such reliance does not necessitate examining the actual liquid that was spilled. Dr. Blickenstaff's opinions both relate back to molecular weight, a characteristic that is effectively uniform in each molecule of Poly(Dimethyldiallylamminium Chloride), and its repeating nature

7

based on the chemical equation about which he testified. The components of AquaEZ, as ascertained from the package labeling and Ciba MSDS, supplies the necessary molecular and chemical information for forming the doctor's general rebuttal testimony.

As to the MSD sheets, Dr. Blickenstaff, as stated above, spent approximately a decade composing and/or contributing to the composition of such sheets and evaluating many others. At his deposition, he demonstrated a knowledge of MSD sheets, the terms employed therein, and the process by which they are composed. [See Doc. 68-1 at 36-39]. These sheets are fairly straight-forward, concise materials, and given the doctor's experience with them, it is inappropriate to exclude his testimony simply because he did not intensely study a second MSD sheet containing essentially the same information, in advance of his deposition or print a copy for his records. The Court finds he is quite qualified to testify about MSD sheets, in general, and about the ones addressing the polymer/chemical at issue in this case, in particular.

Finally, the Court notes that Dr. Blickenstaff stated that he was supplied with and reviewed both Dr. Moreno's deposition and the Plaintiff's deposition to become familiar with the facts of this matter. Dr. Blickenstaff indicated in his deposition that he accepted the Plaintiff's testimony about the facts of the spill, the amount of AquaEZ spilled, etc.

Based on the foregoing, the Court finds that, while a proper cross-examination may lead a jury to discount Dr. Blickenstaff's testimony because of the faults highlighted by the Plaintiff, these shortcomings are not themselves grounds for exclusion.

Finally, the Court turns to the issue of the reliability of Dr. Blickenstaff's application of medical, molecular, and toxicological principles to the facts of the present case. The Plaintiff maintains that Dr. Blickenstaff has never performed any diagnostic testing and does not know the

8

Case 3:04-cv-00294 Document 72 Filed 10/21/09 Page 8 of 11 PageID #: 423

amount of AquaEZ to which the Plaintiff was exposed. The Plaintiff argues that Dr. Blickenstaff's generalizations about the molecular weight and its correlation to volatility and harm to the olfactory nerve are not sufficiently reliable to withstand scrutiny under Rule 702. The Defendant, again, argues that any attack on the reliability of the application of medical, molecular, and toxicological principles is fodder for cross-examination.

Dr. Blickenstaff concedes that he has not performed any experiments in forming his opinions, [Doc. 68-1 at 30], and he undeniably relies on his experience and general principles of toxicology in formulating his opinions. For example, in his short, witness disclosure, Dr. Blickenstaff explains that the polymer is a cationic polymer, specifically, an organic cationic polyelectrolyte. [Doc. 68-1 at 76]. Dr. Blickenstaff explains that he is familiar with this type of polymer and that these water-soluble compounds are known to be of low toxicity to mammals. [Doc. 68-1 at 76]. Dr. Blickenstaff also explains that given the polymer's low level of volatility, it is not prone to evaporate, and he further reasons that without such evaporation the polymer would not have reached the Plaintiff's olfactory nerve. [Doc. 68-1 at 76-77]. Dr. Blickenstaff expounded upon and further explained these general principles and his opinions at his deposition. [Doc. 68-1 at 62-66].

The Plaintiff has not provided any tests or experiments that could have or should have been made by Dr. Blickenstaff and the Court cannot divine any. The Plaintiff argues Dr. Blickenstaff did not know what other additives are in AquaEZ, nor their potential effect, but Dr. Blickenstaff did testify about the reasonable probability of these additives causing harm. The Court is unaware of any issue that exists regarding any chemical other than the "active ingredient" that is at issue. The Plaintiff also argues Dr. Blickenstaff did not examine the Plaintiff, but the Court cannot imagine what an examination, years later, would add and none has been proffered—especially in light of Dr.

9

Blickenstaff's admission that Plaintiff does have anosmia.

The Court concludes that Dr. Blickenstaff's opinion is based upon the application of medical and toxicology knowledge and expertise to the facts at issue. Dr. Blickenstaff's testimony consists of application of simple scientific rules such as chemical structure, molecular weight, toxicity, and evaporation, and while the opinions may not be overly in-depth, it appears to the Court that Dr. Blickenstaff is qualified to offer opinions on the matters disclosed and the basis for his opinions. These opinions are products of Dr. Blickenstaff's experience and knowledge and are reliable, and accordingly, the Court finds that the Plaintiff's allegations of unreliable application are not grounds for excluding the opinions from evidence.

In sum, the Court agrees with the Plaintiff that there may be grounds for discounting Dr. Blickenstaff's opinions. However, the Plaintiff's allegations do not amount to grounds for exclusion under Daubert or Rule 702. Dr. Blickenstaff's opinions are based upon his qualifications, training, experience, and expertise with polymers and chemicals similar to the one to which the Plaintiff was exposed, and a jury will find his opinions useful in deciding the issues before them. There is little danger of confusion, and the opinions are reliable application of medical, molecular, chemical, and toxicological principles and experience. As the Supreme Court of the United States has explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The Plaintiff shall pursue any undermining of Dr. Blickenstaff's opinions through such methods.

## III.  CONCLUSION

Based upon the foregoing, the Court finds that the Plaintiff's Second Motion to Exclude the Testimony of Dr. Blickenstaff **[Doc. 68]** is not well-taken, and it is **DENIED**.

**IT IS SO ORDERED**.

ENTER:

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge